United States District Court
Middle District of Florida
Jacksonville Division

**GUILLERMO ANTONIO DE LEON SERRABI,**

**Plaintiff,**

**v.** **NO. 3:24-cv-1212-JEP-LLL**

**UNITED STATES OF AMERICA, ET AL.,**

**Defendants.**

---

## Report and Recommendation

Before the Court is United States of America's Motion to Dismiss Counts I-III of Plaintiff's Amended Complaint, doc. 20, Defendant Sheriff Rhoden's Motion to Dismiss Plaintiff's Amended Complaint [ECF No. 16], doc. 31, and plaintiff Guillermo Antonio De Leon Serrabi's (Serrabi) responses to both motions, docs. 29, 35. For the reasons stated below, I recommend defendant United States of America's (the United States) motion to dismiss, doc. 20, be denied and defendant Sheriff Rhoden's (Rhoden) motion to dismiss, doc. 31, be granted.

## Background

Serrabi makes the following factual allegations in his amended complaint, doc. 16, which the Court must accept as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Serrabi is an El Salvador national who currently resides in El Salvador. Doc. 16 ¶ 14. He arrived in the United States in May 2013 as a minor. *Id.* ¶ 18. On September 15,

2021, an immigration judge issued a final order of his removal for being unlawfully present in the United States. *Id.* ¶ 19. Serrabi was first held as a detainee pending removal at the Baker County Detention Center (Baker). *Id.* ¶¶ 20, 23. Thereafter, he was temporarily transferred to the Krome North Processing Center (Krome), before being transferred back to Baker. *Id.* ¶ 21.

The main thrust of plaintiff's case involves the period of time he was held in solitary confinement at Baker in 2021 and 2022. The Baker County Sheriff's Office (BCSO) operates Baker under an agreement with the Baker County Corrections Management Corporation. *Id.* ¶¶ 23, 24. As a result of that authority, in 2009, Rhoden entered into an Intergovernmental Services Agreement (IGSA)[1] with United States Immigration and Customs and Enforcement (ICE) to house immigration detainees. *Id.* ¶ 24. The purpose of the IGSA "is to establish an Agreement between ICE and [Baker] for the detention and care of persons detained under the authority of the Immigration and Nationality Act, as amended." Doc. 20-1 at 2. Under the IGSA, "[a]ll persons in the custody of ICE are 'Administrative Detainees.'" *Id.*

[1] The ISGA is attached to the United States' motion to dismiss as an exhibit. *See* 20-1. When ruling on a motion to dismiss, a district "court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed. In this context, undisputed means that the authenticity of the document is not challenged." *Day v. Taylor*, Nos. 04-10031, 04-10671, 400 F.3d 1272, 1276 (11th Cir. 2005) (internal quotation marks omitted) (quoting *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)).

Here, the IGSA is central to plaintiff's claims as it is referenced in the amended complaint, *see* doc. 16 ¶¶ 24, 25, and plaintiff's claims stem from his time spent in solitary confinement while detained at Baker. In addition, neither party challenges the authenticity of the IGSA in the pleadings.

On October 29, 2021, Serrabi was transferred back to Baker from Krome, where he remained until he was removed to El Salvador. Doc. 16 ¶ 21. According to the amended complaint, ICE instructed BCSO to place Serrabi in solitary confinement because he "refused to take a COVID-19 test and failed to sign papers to facilitate his removal from the United States." *Id.* ¶ 33. A Baker County Sheriff's Office Incident Report (Incident Report) dated January 25, 2022, attached as an exhibit to the amended complaint, *see* doc. 16-1, indicates that Serrabi was "housed in confinement" at Baker "under the advisement of immigration" officers. Doc. 16 ¶ 34 (citing doc. 16-1 at 1).[2] Serrabi alleges that an ICE officer informed him "that he would remain in solitary confinement until he agreed to sign papers to facilitate his removal from the United States." *Id.* ¶ 35. At ICE's direction, Serrabi alleges that he remained in solitary confinement for 88 days. *Id.* ¶ 31.[3]

While placed in solitary confinement, Serrabi alleges that his mental health deteriorated. *Id.* ¶ 44. On November 12, 2021, Serrabi reported "hearing voices." *Id.* He claims that he suffered from "increased visual hallucinations by January 21, 2022." *Id.* Serrabi also experienced worsening depression and anxiety. *Id.* The amended

---

[2] The amended complaint states that "Mr. Serrabi's detention records indicate that he was 'housed in confinement' at Baker 'due to the advisement of immigration officers,'" doc. 16 ¶ 34; however, the Incident Report states that "[d]ue to [Serrabi] being detained *under the* advisement of immigration," approval for release was also obtained from immigration. Doc. 16-1 at 1 (emphasis added).

[3] Serrabi also cites ICE Directive 11065.1. Doc. 16 ¶ 41.

complaint alleges that BCSO officers visited Serrabi at his cell as frequently as every two days, asking him whether he was ready to be deported, despite being represented by counsel. *Id.* ¶ 45. Further, Serrabi was denied telephone calls and recreational time. *Id.* ¶ 48.

On December 21, 2021, defendant Caleb Collins (Collins) entered Serrabi's cell and instructed him to stop singing and "threatened him with violence." *Id.* ¶¶ 49, 50. In response, Serrabi stated that he only "feared god," and—when he attempted to engage a different BCSO officer—Collins punched him in his left ear, which damaged his ear drum. *Id.* ¶ 50. The following day, Serrabi was permitted to visit the medical unit, where he reported pain and trouble hearing. *Id.* ¶ 55. Medical staff conducted a medical exam but took no further action. *Id.* On December 30, 2021, Serrabi requested medical assistance for ongoing ear pain and hearing problems. *Id.* ¶ 57. The medical staff determined that Serrabi's ear drum was detached and provided instructions to "return to sick call if symptoms worsen or persist more than 7 days." *Id.* Serrabi remained in solitary confinement following the injuries, *id.* ¶ 58, and was eventually deported to El Salvador in August 2022, *id.* ¶ 21.

On November 22, 2024, Serrabi filed his complaint, doc. 1, and on May 19, 2025, he filed an amended complaint, doc. 16. In the amended complaint, Serrabi asserts causes of action against the United States for violations of the Federal Tort Claims Act (FTCA) including false imprisonment (Claim I),[4] intentional infliction of

---

[4] In the amended complaint, Serrabi refers to individual "Counts" as "Claims." *See* doc. 16 at 15, 17, 19, 21.

emotional distress (IIED) (Claim II), and negligence (Claim III); plaintiff also asserts a cause of action against Rhoden and Collins under the Fourteenth Amendment for 42 U.S.C. § 1983 excessive force (Claim IV). Doc. 16 ¶¶ 69–111. Plaintiff alleges that he "timely filed an administrative complaint with ICE and DHS related to the abuse and injuries he suffered at Baker," *id.* ¶ 10, which the United States and Rhoden presumably do not dispute because neither defendant addresses exhaustion of administrative remedies in their motions to dismiss. Both the United States, doc. 20, and Rhoden, doc. 31, now move to dismiss the claims asserted against them in the amended complaint.

## Authority

### A. Fed. R. Civ. P. 12(b)(1)

Under Fed. R. Civ. P. 12(b)(1), a party may assert lack of subject-matter jurisdiction as a defense. *Id.* "It is well settled that the United States, as a sovereign entity, is immune from suits unless it consents to be sued." *Zelaya v. United States*, 781 F.3d 1315,1321 (11th Cir. 2015) (citations omitted). "Through the enactment of the FTCA, the federal governments has, as a general matter, waived its immunity from tort suits based on state law tort claims." *Id.* (citing *Millbrook v. United States*, 569 U.S. 50, 52 (2013). "If there is no specific waiver of sovereign immunity as to a particular claim filed against the Government, the court lacks subject matter jurisdiction over the suit." *Id.* (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 475–76 (1994)).

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) comes in two forms: a "facial attack" or a "factual attack." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990) (per curiam). A "[f]acial attack[] on the complaint require[s] the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for purposes of the motion." *Id.* (cleaned up) (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980), *cert. denied*, 449 U.S. 953 (1980).[5] On the other hand, a factual attack "challenge[s] the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony, and affidavits, are considered." *Id.* (internal quotation marks omitted) (quoting *Menchaca*, 549 F.2d at 511).

**B. Fed. R. Civ. P. 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has explained this requires that "a complaint . . . contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff

[5] In *Bonner v. City of Pritchard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit made prior to the close of business on September 30, 1981.

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

A complaint must contain "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545. The mere possibility a defendant acted unlawfully is insufficient to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (citation omitted). In deciding a Rule 12(b)(6) motion, a district court should construe the complaint broadly and view the allegations in the light most favorable to the plaintiff. *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006) (citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999)).

## Discussion

### I. The United States' Motion to Dismiss

The United States moves to dismiss Claims I, II, and III under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction. Doc. 20 at 6. Specifically, it argues that the Court lacks subject-matter jurisdiction because the independent contractor exception applies to plaintiff's FTCA claims. *Id.* at 6–7. The United States also moves to dismiss Claims I and III for lack of subject-matter jurisdiction on the basis that plaintiff fails to allege private person analogues[6] under Florida law for false imprisonment and negligence. *Id.* at 10–11. Lastly, the United States moves to dismiss

[6] The independent contractor exception and private person analogue requirement will be explained in more detail below.

Serrabi's IIED claim pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. *Id.* at 11.

### A. Dismissal Under Fed. R. Civ. P. 12(b)(1)

#### 1. The Independent Contractor Exception[7]

The United States argues that Serrabi's claims should be dismissed because, under the FTCA, the United States is liable "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any *employee* of the Government while acting within the scope of his office or employment." Doc. 20 at 5 (emphasis added) (quoting 28 U.S.C. § 1346(b)(1)).

"It is well established that the United States is immune from suit unless it consents to be sued." *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1306 (11th Cir. 2022) (citing *Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1188 (11th Cir. 2011)). But the FTCA "allows a plaintiff to bring certain state-law tort suits against the Federal Government." *Brownback v. King*, 592 U.S. 209, 210 (2021) (citing 28 U.S.C. §§ 2674, 1346(b)). In other words, the FTCA "waive[s] sovereign immunity of the United States for certain torts committed by federal employees acting

[7] One of the exceptions to the FTCA's waiver of sovereign immunity is the discretionary function exception. *U.S. Aviation Underwriters, Inc. v. United States*, 562 F.3d 1297, 1299 (11th Cir. 2009) (per curiam). "The discretionary function exception excludes from the FTCA's broad waiver of sovereign immunity 'any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.'" *Id.* (cleaned up) (quoting 28 U.S.C. § 2680(a)). The United States does not raise the discretionary function exception and, thus, the Court will not consider it. *See Shedd v. Wells Fargo Home Mortg., Inc.*, No. 14-00275-CB-M, 2014 WL 6451245, at *4 n.3. (Nov. 17, 2014) (stating that "[t]he Court will not address a potential basis for dismissal that has not been raised").

within the scope of their employment." *Id.* at 212 (internal quotation marks omitted) (citing *Meyer*, 510 U.S. at 475–76).

The waiver of sovereign immunity in 28 U.S.C. § 1346(b)(1) does not apply to "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h). This is otherwise known as the intentional tort exception to the waiver of sovereign immunity. *Corbett v. Transp. Sec. Admin.*, 568 F. App'x 690, 699 (11th Cir. 2014) (per curiam). However, the United States is still liable under what is known as the "law enforcement proviso" of the FTCA for intentional torts committed by "investigative or law enforcement officers of the United States Government." *Id.* (quoting 28 U.S.C. § 2680(h) (emphasis omitted)).[8]

The FTCA also provides for other exceptions to the waiver of sovereign immunity, including the independent contractor exception. *See Phillips v. United States*, 956 F.2d 1071, 1077 (11th Cir. 1992) (citing *Dickerson, Inc. v. United States*, 875 F.2d 1577, 1582 (11th Cir. 1989)). The independent contractor exception to the FTCA provides that the government is not liable for the acts of independent contractors. *See id.* (citing *Dickerson*, 875 F.2d at 1582). This means that "the United States may not be held derivatively or vicariously liable for the acts of independent contractors." *Id.* (citing *Dickerson*, 875 F.2d at 1582).

[8] The United States does not argue that ICE officers do not constitute law enforcement officers of the United States Government under 28 U.S.C. 2680(h).

"The FTCA defines an 'employee of the government' to include 'officers or employees of any federal agency . . . and persons acting on behalf of a federal agency in an official capacity.'" *Means v. United States*, 176 F.3d 1376, 1379 (11th Cir. 1999) (quoting 28 U.S.C. § 2671). Federal law determines whether an individual is an employee of the United States for purposes of the FTCA. *See Logue v. United States*, 412 U.S. 521, 527–28 (1973). "In determining whether an individual is an 'employee of the government' under the FTCA, courts have adopted what is called the 'control test.'" *Means*, 176 F.3d at 1379. Under the control test, "a person is not an 'employee of the government' for FTCA purposes unless the government controls and supervises the day-to-day activities of the individual." *Id.* (citations omitted).

The United States argues that the Court lacks subject-matter jurisdiction over Claims I, II, and III because the United States is only liable for the negligent or wrongful acts or omissions of its employees—and not the acts of individuals who are contracted by the United States to perform certain functions. Doc. 20 at 6–7. According to the United States, the BSCO officers, as employees of Baker County, committed the wrongful acts that Serrabi alleges in the amended complaint. *Id.* at 7.

In response, Serrabi asserts that the independent contractor exception does not apply because he sufficiently alleges in his amended complaint that (1) ICE directed BSCO officers to place him in solitary confinement to induce him to sign papers to facilitate his removal from the United States and (2) ICE kept him in solitary confinement for 88 days without providing appropriate medical care and in disregard for his mental health issues. Doc. 29 at 4–5.

Here, the Court finds that Serrabi sufficiently alleges actions attributable to ICE officers as employees of the Government, which would overcome the independent contractor exception at this early stage of the proceedings. The United States argues that "[p]laintiff has not alleged any facts to suggest ICE has any control over any actions taken by the Baker County employees, much less their day-to-day activities" and that "the tort claims in the instant case solely concern the alleged actions or omissions of Baker County Officers." Doc. 20 at 9. But these arguments are contradicted by the amended complaint, which alleges that "ICE officers instructed BCSO that Serrabi should be placed and kept in solitary confinement because he refused to take a COVID-19 test and failed to sign papers to facilitate his removal from the United States." Doc. 16 ¶ 33. Serrabi also alleges "detention records indicate that he was 'housed in confinement' at Baker 'due to the advisement of immigration' officers." *Id.* ¶ 34 (citing doc. 16-1 at 1). Finally, Serrabi claims that he "was told by an ICE officer that he would remain in solitary confinement until he agreed to sign papers to facilitate his removal from the United States." *Id.* ¶ 35.

While Serrabi does not explicitly allege that ICE "controls and supervises the day-to-day activities of" BCSO, *Means*, 176 F.3d at 1379 (citations omitted), "[a]t the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff," *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006) (quoting *Bryant*, 187 F.3d at 1273 n.1). Serrabi's allegation that ICE dictated his placement in solitary confinement,

doc. 16 ¶ 33, and his allegation that detention records[9] support this allegation, creates the inference that ICE, to at least some extent, controls and supervises the day-to-day activities of the BCSO officer or officers who allegedly committed the wrongful acts. *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) (stating that "[a] district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss."). The amended complaint also directly cites to ICE Directive 11065.1, which provides that "[p]lacement of detainees in segregated housing . . . requires careful consideration of alternatives," "should occur only when necessary," and that "ICE shall take additional steps to ensure appropriate review and oversight of decisions to retain detainees in segregated housing for over 14 days." Doc. 16 ¶ 41. Such language indicates that ICE maintains control over certain aspects of solitary confinement.

A review of the Incident Report referenced in the amended complaint, and attached as an exhibit, supports plaintiff's allegation. It reads that "[d]ue to [plaintiff] being housed in confinement under the advisement of immigration, approval for release was retained from ERO management."[10] Doc. 16-1 at 1; *see also Cesar v. Achim*, No. 07C128, 2009 WL 2225414, at *2 (E.D. Wis. July 22, 2009) (denying motion to dismiss where "[p]laintiff has clearly asserted that employees of the United States such

---

[9] While plaintiff characterizes doc. 16-1 as "detention records," doc. 16 ¶ 34, the exhibit is titled Baker County Sheriff's Office Incident Report, doc. 16-1 at 1.

[10] ERO is presumed to be ICE Enforcement and Removal Operations.

as [defendant] and other federal employees had personal involvement in the claims at issue—that they were aware, for example, of the failure to provide plaintiff with adequate medical care but did nothing to remedy it"); *Corpeno-Argueta v. United States*, 341 F. Supp. 3d 856, 865 (N.D. Ill. 2018) (finding that the independent contractor exception does not require dismissal of plaintiff's FTCA claim where "[p]laintiff alleges misconduct on the part of the Government").

In its motion, the United States relies heavily on *Logue*, 412 U.S. at 527–28. Doc. 20 at 6–8. In *Logue*, a federal prisoner was housed in a county jail pending trial. *Id.* at 522. The county jail contracted with the federal government to house federal prisoners. *Id.* at 523. After his initial incarceration, plaintiff attempted to commit suicide, was taken to an emergency hospital room, and was transferred back to the county jail because federal officials made such arrangements. *Id.* at 524. Before the transfer, a United States Marshal requested that the federal prisoner be placed in a cell without any dangerous objects. *Id.* Thereafter, the federal prisoner hanged himself, and his family sued the United States for damages under the FTCA. *Id.* at 523–24.

Although the district court found the United States liable under the FTCA, the Fifth Circuit reversed the judgment concluding there was "no support in the record for holding that [a] Deputy [United States Marshal] had any power or authority to control any of the internal functions of the [county jail]." *Id.* at 525. The Supreme Court affirmed the Fifth Circuit because their" conclusion that the deputy marshal had no authority to control the activities of the sheriff's employees is supported by both the enabling statute and the contract actually executed between the parties." *Id.* at 530.

This is distinguishable from the present case where the Incident Report creates the inference that ICE maintained some control over the operations because BCSO's internal documents indicate that Serrabi was "housed in confinement under the advisement of immigration" and "approval for release [from solitary confinement] was retained [sic] from" ICE Enforcement and Removal Operations. Doc. 16-1 at 1. But the United States fails to even reference, much less discuss, the Incident Report in its initial filing; nor did it request a reply to do so. Thus, I recommend that the United States' motion to dismiss based on the independent contractor exception to the FTCA be denied.[11]

### 2. Private Person Analogue – False Imprisonment Claim

The United States also moves to dismiss Claim I—Serrabi's claim for false imprisonment—for lack of subject-matter jurisdiction because it fails to allege a private person analogue under Florida law for false imprisonment. Doc. 20 at 10. According to the United States, it has not waived its sovereign immunity, and the Court lacks subject-matter jurisdiction over the false imprisonment claim because an essential element for a false imprisonment claim in Florida is that the defendant against whom plaintiff asserted the claim must have acted without lawful authority, *id.* (citing *Johnson v. Barnes & Noble Booksellers, Inc.*, 437 F.3d 1112, 1116 (11th Cir. 2006) (per curiam)),

[11] The Court notes that this issue may be better addressed on a motion for summary judgment. *See Chaverra v. United States*, No. 4:19-CV-81 (CDL), 2020 WL 5579554, at *6 (M.D. Ga. Sept. 17, 2020) (stating that the issue of whether the independent contractor exception applies "would be better addressed on a motion for summary judgment following discovery").

and plaintiff fails to "allege that he was unlawfully detained by ICE in the physical control of BCSO," *id.* Serrabi refutes the United States' argument, claiming that he sufficiently alleges a claim for false imprisonment because inmates have a limited liberty interest in being placed with the general population. Doc. 29 at 9 (quoting *Banks v. Jones*, 232 So. 3d 963, 966 (Fla. 2017)). He also argues that he sufficiently alleges a claim because ICE lacked authority in violation of its own policies and procedures to place and keep him in solitary confinement. *Id.* at 11–12.

As discussed above, the United States "may not be sued without its consent." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). However,

> [w]hen the United States, *if a private person*, would be liable to a claimant, the FTCA provides a limited waiver of sovereign immunity to permit imposing liability on the government for an injury caused by the negligent or wrongful act or omission of any government employee who is acting within the scope of his office or employment.

*Reed v. U.S. Postal Serv.*, 288 F. App'x 638, 639 (11th Cir. 2008) (per curiam) (emphasis added) (quoting 28 U.S.C. § 1346(b)). Thus, courts are "required to look to the state-law liability of private entities, not to that of public entities, when assessing the Government's liability under the FTCA." *United States v. Olson*, 546 U.S. 43, 46 (2005). Courts adhere "to this 'private person standard, even when uniquely governmental functions are at issue.'" *Id.* (citations omitted).

To establish subject-matter jurisdiction under the FTCA, a plaintiff must show that "a private individual under like circumstances would be liable under state law." *United States v. Muniz*, 374 U.S. 150, 153 (1963); *see* 28 U.S.C. § 1346(b). A private

analogue need only exist under "like circumstances," not "under the same circumstances." *Indian Towing Co. v. United States*, 350 U.S. 61, 64 (1955); *see also Olson*, 546 U.S. at 46. In other words, "what is meant by like circumstances is analogous circumstances not identical ones." *Turner ex rel. Turner v. United States*, 514 F.3d 1194, 1203 (11th Cir. 2008) (cleaned up) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). The Eleventh Circuit has instructed that the private person analogue "requires only that the United States be analogized to a similarly situated private party." *Turner ex rel. Turner*, 514 F.3d at 1203 (quoting *Haceesa v. United States*, 309 F.3d 722, 726 n.3 (10th Cir. 2002)). The Eleventh Circuit also acknowledged that "Congress' chief intent in drafting the FTCA was simply to provide redress for ordinary torts recognized by state law." *Id.* (citing *Pate v. Oakwood Mobile Homes, Inc.*, 374 F.3d 1081, 1084 (11th Cir. 2004)).

As a threshold matter, the FTCA "waives the Government's sovereign immunity from tort suits, including those based on certain intentional torts committed by federal law enforcement officers." *Millbrook v. United States*, 569 U.S. 50, 52 (2013). Under 28 U.S.C. § 2680(h), the United States remains liable for claims arising out of enumerated intentional torts including false imprisonment committed by "investigative or law enforcement officers of the United States Government." *Id.* The parties do not dispute that ICE, and its officers constitute "investigative or law enforcement officers" employed by the United States as neither the motion to dismiss, doc. 20, nor the response in opposition, doc. 29, address the issue.

Here, the United States confusingly argues that Serrabi fails to allege a private person analogue for false imprisonment because there is no allegation in the amended complaint that ICE officers acted without lawful authority by detaining him in the physical control of BCSO. Doc. 20 at 10. When determining whether plaintiff establishes a private person analogue, the question is not whether plaintiff sufficiently alleges all elements of the underlying cause of action, but rather "whether [state] tort law imposes an analogous duty on private individuals in similar circumstances." *LabMD, Inc. v. United States*, No. 1:21-cv-3525-MLB, 2023 WL 2336892, at *11 (N.D. Ga. Mar. 2, 2023) (citing *Olson*, 546 U.S. at 43). "In other words, would a private person be subjected to liability if he or she did what the government employee allegedly did?" *Id.*

Serrabi alleges "ICE agents acted within the scope of their office or employment under circumstances such that, if they were a private person, they would be liable to Plaintiff in accordance with the laws of the State of Florida" and that Florida recognizes a cause of action for false imprisonment. Doc. 16 ¶¶ 70, 71. He further alleges that ICE unlawfully held him in solitary confinement, which deprived him of his liberty without a legal basis; such detention was against his will; ICE did not have lawful authority to hold him in solitary confinement for a prolonged period of time "because such confinement implicated a separate liberty interest"; and the prolonged amount of time in solitary confinement—88 days—was unreasonable and unwarranted. *Id.* ¶¶ 31, 73, 74, 75, 76.

Florida does in fact recognize a cause of action for false imprisonment. *See Johnson v. Weiner*, 19 So. 2d 699, 701 (Fla. 1944) (recognizing that an individual may be liable for "an action for false imprisonment" in Florida); *Harris v. Lewis State Bank*, 436 So. 2d 338, 341 (Fla. Dist. Ct. App. 1983) (stating that plaintiff "was in fact detained by the [defendant]'s security guard against her will, thereby satisfying the basic requisites of an action for false imprisonment"). In *Pokorny v. First Fed. Sav. & Loan Ass'n of Largo*, 382 So. 2d 678, 682 (Fla. 1980), the Florida Supreme Court recognized that a private citizen may be liable for the tort of false imprisonment if the private citizen actually detained another or instigated the other's arrest by law enforcement officers; *id.*; *see Harder v. Edwards*, 174 So. 3d 524, 530 (Fla. Dist. Ct. App. 2015); *Laguerre v. City of Coral Springs*, 673 So. 2d 60, 61 (Fla. Dist. Ct. App. 1996) (per curiam) (citations omitted) (reversing dismissal where the complaint sufficiently alleged that retail employees "instigated" or "directly procured" appellant's arrest).

"Not to be confused with 'identical circumstances,' the 'like circumstances,' standard is not overly stringent, and should be applied broadly so as to achieve the statute's intended purpose of putting the federal government on equal footing with private entities." *Belluomini v. United States*, 64 F.3d 299, 303 (7th Cir. 1995) (citation omitted). In addition, "[t]he fact that the FTCA explicitly waives the Government's sovereign immunity for false imprisonment claims supports the notion that a private analogue exists for false imprisonment, as the claim was something Congress expressly contemplated when carving out exceptions to the FTCA's liability exemptions." *Mayorov v. United States*, 84 F. Supp. 3d 678, 701 (N.D. Ill. 2015) (citation omitted).

Thus, a private person would be subjected to liability in Florida for false imprisonment if the person "actually detained another or instigated the other's arrest by law enforcement officers." *Pokorny*, 382 So. 2d at 682. I find Serrabi sufficiently alleges a private person analogue for false imprisonment under Florida law.

The United States' arguments concerning false imprisonment are more aptly characterized as failure to state a claim under Fed. R. Civ. P. 12(b)(6). *See* doc. 20 at 10 (stating that "[nowhere] in Plaintiff's Amended Complaint does he allege that he was unlawfully detained by ICE in the physical control of BSCO"). "Under Florida law, false imprisonment is the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and deprivation of his liberty." *Archer v. City of Winter Haven*, 846 F. App'x 759, 763 (11th Cir. 2021) (per curiam) (alteration adopted) (internal quotation marks omitted) (quoting *Johnson*, 19 So. 2d at 700). "To state a cause of action for false imprisonment, the plaintiff must establish: 1) the unlawful detention and deprivation of liberty of a person 2) against that person's will 3) without legal authority or color of authority . . . 4) which is unreasonable and unwarranted under the circumstances." *Id.* (internal quotation marks omitted) (quoting *Harder*, 174 So. 3d at 530).

At issue here is whether Serrabi sufficiently pleads that ICE acted without legal authority or color of authority in placing and keeping him in solitary confinement. Serrabi alleges in the amended complaint that ICE initially detained him because he "became subject to a final order or removal from the United States on September 15, 2021, for being unlawfully present." Doc. 16 ¶ 19. However, he also alleges that ICE

unlawfully placed and kept him in solitary confinement. *See id.* ¶¶ 2, 3, 73. He further alleges that ICE "placed and kept [him] in solitary confinement because he refused to take a COVID-19 test[12] and sign papers to facilitate his removal from the United States." *Id.* ¶ 33. Lastly, the amended complaint alleges that Serrabi's "detention records are devoid of any other reason for his 88 days of solitary confinement." *Id.* ¶ 36.

Other courts have recognized that an individual lawfully detained at a detention facility may state a claim for false imprisonment. *Doe v. Baker Cnty.*, No. 3:23-cv-00609-CRK-LLL, 2025 WL 834340, at *11 n.24 (M.D. Fla. Mar. 17, 2025) ("Even though [plaintiff] was lawfully detained within BCDC, it is still possible for her to allege a claim for false imprisonment within BCDC." (citing *Willey v. Kirkpatrick*, 801 F.3d 51, 70–71 (2d Cir. 2015)); *see Wiley*, 801 F.3d at 55, 70–71 (determining that plaintiff, a state prisoner placed in solitary confinement, sufficiently alleged the elements for false imprisonment")). In *Baker*, the Court held that the plaintiff "properly stated a claim for false imprisonment . . . for locking her in the law library" because she alleged that such action was "against her will" and punitive. 2025 WL 834340, at *11.

Similarly, here, Serrabi alleges that he was unlawfully placed and kept in solitary confinement as punishment for refusing to sign papers to facilitate his removal from the United States. Doc. 16 ¶¶ 33, 35. I find that—at this stage of the proceedings—Serrabi sufficiently alleges a claim for false imprisonment. As a result, I

[12] Serrabi also alleges that he "was fully vaccinated against COVID-19." Doc. 16 ¶ 37.

respectfully recommend that the United States' motion to dismiss be denied on the grounds that plaintiff failed to state a private person analogue under state law in addition to the construed grounds that plaintiff fails to sufficiently state a claim for false imprisonment.

**3. Private Person Analogue – Negligence Claim**

Regarding Serrabi's negligence claim, doc. 16 ¶¶ 92–103, the United States asserts—in a single paragraph—that Serrabi fails to allege a private person analogue because his "allegations merely contain a recitation of the requirements of proving negligence without actually stating any factual allegations identifying this duty; nor how a private person would be liable for maintaining such a duty." Doc. 20 at 11.

In contrast, Serrabi argues that he sufficiently states a claim for negligence under Florida law because ICE breached two separates duties: (1) by placing him in solitary confinement despite knowing of his mental health vulnerabilities, ICE placed him in an "inherently dangerous" situation, thereby breaching a nondelegable duty of reasonable care, doc. 29 at 13 (quoting *Dickerson*, 875 F.2d at 1582), and (2) after Collins injured Serrabi, ICE became aware of a "dangerous situation,"[13] giving rise to a duty to stop or otherwise remove the danger, which ICE failed to do, *id.* (quoting *Cochran v. United States*, 38 F. Supp. 2d 986, 993–94 (N.D. Fla. 1998)). Serrabi also contends that the amended complaint "alleges that ICE officers had a Florida law duty

[13] As explained in more detail below, this argument is different than the negligence claim set forth in the amended complaint. In the amended complaint, Serrabi alleges that ICE owed him a duty as a detainee in custody and breached the duty by placing and keeping him in solitary confinement. *See* doc. 20 ¶¶ 95, 96.

analogous to private employers not to be negligent in their supervision of Baker officers who they directed to place and keep in solitary confinement and that they breached this duty by failing to act." *Id.* at 15.

At the outset, the United States is liable under the FTCA for "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). Serrabi's negligence claim falls squarely within this provision.

With respect to the private person analogue, as stated above, the question is "whether [state] tort law imposes an analogous duty on private individuals in similar circumstances." *LabMD, Inc*, 2023 WL 2336892, at *11. Serrabi alleges that "ICE agents acted within the scope of their office or employment under circumstances such that, if they were private persons, they would be liable to Plaintiff in accordance with the laws of the State of Florida." Doc. 16 ¶ 93. In addition, Serrabi alleges that Florida recognizes a cause of action for negligence, *id.* ¶ 94, and that ICE owed a legal duty of care to Serrabi as a detained individual in its custody and because ICE placed Serrabi in danger, *id.* ¶ 95. Serrabi also alleges that ICE breached its duty when it placed and kept him in solitary confinement without appropriate medical care and in disregard of his mental health issues, and such action caused Serrabi to suffer injuries. *Id.* ¶¶ 96, 103. Lastly, he alleges that Florida also recognizes a cause of action for negligent training or supervision against public and private employers. *Id.* ¶ 101.

Florida recognizes a cause of action for common law negligence against private individuals. *See Gyongyosi v. Miller*, 80 So. 3d 1070, 1072, 1077 (Fla. Dist. Ct. App.

2012); *Grace & Naeem Uddin, Inc. v. Singer Architects, Inc.*, 278 So. 3d 89, 92 (Fla. Dist. Ct. App. 2019) (quoting *Moransais v. Heathman*, 744 So. 2d 973, 975 (Fla. 1999), *abrogated on other grounds by Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos.*, 110 So. 3d 399, 407 (Fla. 2013) ("Under Florida's common law a person who is injured by another's negligence may maintain an action against the other person on that other person's violation of a duty of due care to the injured person.")).

To the extent Serrabi relies on a theory of negligent hiring, training, or supervision to allege a private person analogue, *id.* ¶ 95, Florida also recognizes a cause of action for negligent hiring, training, or supervision against private employers, *Texas Skaggs, Inc. v. Joannides*, 372 So. 2d 985, 987 (Fla. Dist. Ct. App. 1979) (citations omitted) ("[Appellees] are correct in their position that Florida recognizes negligent hiring, training or retention as legitimate bases of recovery against an employer."); *see Jones v. Vasilias*, 359 So. 3d 10, 14 (Fla. Dist. Ct. App. 2023) (recognizing a cause of action for "negligent hiring, training, retention, supervision, or entrustment against a supervisor individually"). Therefore, a private person would be subjected to liability in Florida for either common law negligence or for negligent hiring, training, or supervision. I find Serrabi sufficiently alleges a private person analogue for negligence under Florida law.

However, as is the case with Serrabi's false imprisonment claim, the Court construes the United States' argument to be that Serrabi fails to state a claim under Fed. R. Civ. P. 12(b)(6). *See* doc. 20 at 11 ("Plaintiff does not state what this legal duty was, where it's found in state law, or how the United States breached it").

Although Serrabi relies on *Dickerson*, 875 F.2d at 1583, the Court does not find it to be persuasive regarding Serrabi's argument that ICE contracted "inherently dangerous" work to BCSO, doc. 29 at 6. *Dickerson* specifically addressed inherently dangerous activities in the context of the transportation and disposal of highly toxic chemicals. 875 F.2d at 1578–79, 1583. The amended complaint contains no allegation that the work ICE contracted to BCSO—the housing of immigrants in ICE custody—is inherently dangerous let alone any reference to the phrase "inherently dangerous."

As for whether the United States owed a duty to Serrabi because ICE put him in a dangerous situation, Florida recognizes a "common law duty of care" to individuals either in custody or detention. *Brown v. Nocco*, No. 8:16-cv-3155-T-02SPF, 2018 WL 4953237, at *9 (M.D. Fla. Oct. 12, 2018) (quoting *Kaisner v. Kolb*, 543 So. 2d 732, 734 (Fla. 1989)); *see Williams v. Tony*, 319 So. 3d 653, 654 (Fla. Dist. Ct. App. 2021) (citations omitted) (stating that "[t]he courts of [Florida] have long recognized that law enforcement owes a duty of care for the safety of those persons taken into custody"); *Joseph as next friend of Estate of Joseph v. Chronister*, No. 20-11073, 2021 WL 4739608, at *8 (11th Cir. 2021) (per curiam) (Jordan, J., concurring) (quoting *Pollock v. Fla. Dep't of Highway Patrol*, 882 So. 2d 928, 932 (Fla. 2004) ("Under Florida law a special tort duty does arise when law enforcement officers become directly involved in circumstances which place people within a zone of risk by creating or permitting dangers to exist, by taking persons into police custody, detaining them, or otherwise subjecting them to danger." (internal quotation marks omitted)).

Here, the amended complaint alleges that "ICE owed a legal duty of care to . . . Serrabi as a detained individual in its custody." Doc. 16 ¶ 95. It also alleges that "ICE breached the duty it owed to [him] when ICE placed and kept him in solitary confinement without required safeguards and failed to ensure he was provided with appropriate medical care . . . for his severe mental health issues and physical injuries."[14] *Id.* ¶ 96. Elsewhere in the amended complaint, Serrabi alleges that his mental health issues are well documented in his detention records and that an intake dated October 29, 2021, indicated that he required "mental health medication during his previous period of detention at Baker and classified him as a 'moderate risk.'" *Id.* ¶ 43.

As discussed above, I find that the amended complaint plausibly alleges that ICE owed him a duty and that it breached that duty.[15] Thus, I respectfully recommend that the United States' motion to dismiss be denied both on the ground that plaintiff failed to state a private person analogue under state law and the construed ground that plaintiff fails to sufficiently state a claim for negligence.

---

[14] To the extent Serrabi alleges that ICE owed him a duty because of its policies, *see* doc. 16 ¶¶ 31, 42, 65, 73, 75, 91, 102, I do not find that argument persuasive. In Florida, "written agency protocols, procedures, and manuals do not create an independent duty of care." *Pollock*, 882 So. 2d at 936 (citation omitted).

[15] Because Serrabi sufficiently alleges that ICE owed him a duty and breached that duty, the Court need not address whether Serrabi sufficiently alleges that ICE may be liable for negligent training or supervision. *See* doc. 16 ¶ 101. The amended complaint does not assert a separate cause of action for negligent training or supervision against the United States.

### B. Dismissal Under Fed. R. Civ. P. 12(b)(6)

With respect to Serrabi's IIED claim, doc. 16 ¶¶ 79–91, the United States moves—again in a single paragraph—to dismiss this claim "because Plaintiff has failed to allege any factual allegations necessary to satisfy the legal requirements of [IIED]," doc. 20 at 11. It argues that the amended complaint contains "no allegations" that it acted intentionally or recklessly nor engaged in outrageous conduct. *Id.* at 12. Serrabi contends that he sufficiently alleges a claim for IIED because he alleges that (1) ICE officers acted intentionally and/or recklessly in placing and keeping him in solitary confinement for 88 days; (2) such conduct was outrageous because of its length and the fact ICE officers allegedly knew it would cause him severe distress and injury; and (3) the conduct caused him emotional distress, (4) which was severe. Doc. 29 at 16–19.

Unlike false imprisonment, IIED is not explicitly included in the intentional tort exception to the waiver of sovereign immunity. *See* 28 U.S.C. § 1346(b)(1). Importantly, however, the intentional tort exception is "not limited to the torts specifically named therein, but rather encompasses situations where the underlying governmental conduct which constitutes an excepted cause of action is essential to plaintiff's claim." *O'Ferrell v. United States*, 253 F.3d 1257, 1266 (11th Cir. 2001) (internal quotation marks and citation omitted). Further, as noted above, the United States remains liable for the intentional torts listed in 28 U.S.C. § 2680(h) if committed by "investigative or law enforcement officers of the United States Government." 28 U.S.C. § 2680(h).

Here, Serrabi's claim for false imprisonment is essential to Serrabi's claim for IIED because the underlying conduct for the false imprisonment claim—placing and keeping Serrabi in solitary confinement—also forms the basis for the IIED claim. *See* doc. 16 ¶¶ 73, 74, 76, 82; *see also Corbett*, 568 F. App'x at 699 ("Because [plaintiff]'s invasion of privacy and emotional distress claims are based on the same underlying conduct as his assault and false arrest claims, they are likewise subject to the intentional tort exception to the sovereign immunity waiver" (citation omitted)). Thus, because there is no dispute that ICE officers are "investigative or law enforcement officers of the United States Government," 28 U.S.C. 2680(h), the intentional tort exception does not preclude Serrabi's IIED claim.

"Under Florida law, a claim for intentional infliction of emotional distress has four elements: (1) deliberate or reckless infliction of mental suffering, (2) outrageous conduct, (3) the conduct caused the emotional distress, and (4) the emotional distress was severe." *Lincoln v. Fla. Gas. Transmission, Co.*, 608 F. App'x 721, 722 (11th Cir. 2015) (per curiam) (citing *Thomas v. Hosp. Bd. of Dirs. of Lee Cnty.*, 41 So. 3d 246, 256 (Fla. Dist. Ct. App. 2010)). In determining whether the alleged conduct is sufficiently outrageous, "Florida courts use a very high standard . . . requiring that the conduct be beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Frias v. Demings*, 823 F. Supp. 2d 1279, 1288 (M.D. Fla. 2011) (internal quotation marks omitted) (quoting *Metro Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278–79 (Fla. 1985)).

When a court applies this standard, it "must make an objective determination, and the subjective response of the person suffering emotional distress does not control." *Lincoln*, 608 F. App'x at 722 (citing *Liberty Mut. Ins. Co. v. Steadman*, 968 So. 2d 592, 595 (Fla. Dist. Ct. App. 2007)). "Moreover, whether conduct is outrageous enough to support a claim for intentional infliction of emotional distress is a question of law." *Id.* (citing *Steadman*, 968 So. 2d at 595). Lastly, with respect to the fourth element, "severe emotional distress means emotional distress of such a substantial quality or enduring quality[] that no reasonable person in a civilized society should be expected to endure it." *Kim v. Jung Hyun Chang*, 249 So. 3d 1300, 1305 (Fla. Dist. Ct. App. 2018) (citation omitted).

The United States argues in a cursory fashion that the amended complaint, "is devoid of any factual allegations indicating any intentional or reckless [sic] of the United States, much less any conduct that court be deemed 'outrageous.'" Doc. 20 at 12. A review of the amended complaint shows this assertion by the United States is false.

Serrabi alleges that ICE placed and kept him in solitary confinement after being transferred back to Baker on October 29, 2021. Doc. 16 ¶¶ 32, 82. While the bar for outrageous conduct is admittedly high, *see Frias*, 823 F. Supp. 2d at 1288, Serrabi overcomes the hurdle by alleging that he was placed in solitary confinement while in administrative custody for 88 days in an effort to coerce him to sign deportation papers. Doc. 16 ¶¶ 33, 35, 77, 82. He further alleges that he was kept in solitary confinement for almost 3 months without receiving adequate medical care "for his deteriorating

physical and mental health conditions," including auditory and visual hallucinations, as well as a detached eardrum as a result of an alleged assault by defendant Collins.[16] Doc. 16 ¶¶ 6, 31, 33, 44, 57, 58, 82, 84, 86.

Such alleged conduct is "beyond all possible bounds of decency" and "utterly intolerable in a civilized community." *Frias*, 823 F. Supp. 2d at 1288 (quoting *McCarson*, 467 So. 2d at 278–79); *compare Jacobs v. Georgia*, 820 F. App'x 882, 885, 888 (11th Cir. 2020) (per curiam) (dismissing intentional infliction of emotional distress claim under Georgia law where the pretrial detainee alleged that he received inadequate medical care while detained and was placed in solitary confinement for seven days), *with Annamalai v. United States of America*, No. 22-cv-01541-JPG, 2024 WL 249320, at *2–3 (S.D. Ill. Jan. 23, 2024) (upholding intentional infliction of emotional distress claim under Illinois law, which has substantially similar elements as Florida, where an inmate was placed in solitary confinement for 50 days, while he received daily death threats from another inmate). In addition, Serrabi plausibly alleges that he suffered severe emotional distress from being in solitary confinement for an extended period of time in the form of "auditory and visual hallucinations, dysphoria, depression, anxiety, and feelings of persecution." Doc. 16 ¶ 88. As a result, I recommend that the United States' motion to dismiss as to Claim II under Fed. R. Civ. P. 12(b)(6) be denied.

---

[16] On June 30, 2025, Officer Collins filed an answer. Doc. 27. As a result, Serrabi's claim against Collins is subject to discovery.

## II. Rhoden's Motion to Dismiss

Serrabi also sues Sheriff Rhoden and Officer Collins for excessive force in violation of the Fourteenth Amendment and pursuant to 42 U.S.C. § 1983 (Count IV). Sherrif Rhoden moves to dismiss Serrabi's claim under Rule 12(b)(6) for failure to state a claim on which relief can be granted. Doc. 31 at 2. Sherrif Rhoden is sued in his official capacity, thus his claim is—in essence—a claim against a municipality. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978).

Under 42 U.S.C. § 1983, "[a]nyone who, under color of state law, 'subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities . . . shall be liable to the party injured in an action at law.'" *Salvato v. Miley*, 790 F.3d 1286, 1295 (11th Cir. 2015) (quoting 42 U.S.C. § 1983)). "And for liability purposes, a suit against a public official in his official capacity is considered a suit against the local government entity he represents." *Id.* (cleaned up) (quoting *Owens v. Fulton Cnty.*, 877 F.2d 947, 951 n.5 (11th Cir. 1989) (per curiam)). In other words, "a suit against the sheriff in his official capacity is not a suit against the sheriff, but is essentially a suit against either the Sheriff's Office or the municipal entity." *Ogilvie v. Collier Cnty. Sheriff's Off.*, No. 2:14-cv-354-SPC-CM, 2014 WL 5243345, at *3 (M.D. Fla. Oct. 15, 2014) (citing *Spry v. Turner*, 8:11-CV-531-T-33TGW, 2011 WL 940343, at *2 (M.D. Fla. Mar. 17, 2011)).

"[T]o impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the

policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). For a plaintiff to demonstrate a policy or custom, "it is generally necessary to show a persistent and wide-spread practice." *Id.* (internal quotation marks omitted) (quoting *Wayne v. Jarvis*, 197 F.3d 1098, 1105 (11th Cir. 1999)). "A municipality's failure to correct the constitutionally offensive actions of its police department may rise to the level of a 'custom or policy' if the municipality tacitly authorizes these actions or displays deliberate indifference towards the police misconduct." *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987) (citing *Cannon v. Taylor*, 782 F.2d 947, 951 (11th Cir. 1986)).

Under a failure to train theory of liability, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. at 388. To establish deliberate indifference, a plaintiff must show "that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (citations omitted). This typically requires "[a] pattern of similar constitutional violations by untrained employees." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citing *Bd. of Cnty. Commr's of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)). "Where a plaintiff relies on a pattern of complaints of unconstitutional conduct to show a custom, the complaints must have merit." *Poulin v. Bush*, 650 F. Supp. 3d 1280, 1304 (M.D. Fla. 2023) (citing *Brooks*, 813 F.2d at 1193). In addition, the complaints relied upon "must also concern 'factual

situations that are substantially similar to the case at hand.'" *Id.* (quoting *Buckler v. Israel*, 680 F. App'x 831, 836 n.3 (11th Cir. 2017) (per curiam)).

Rhoden moves to dismiss Serrabi's claim because Serrabi does not sufficiently allege deliberate indifference—specifically that Rhoden knew of a need to train/and or supervise in a particular area. Doc. 31 at 9. He also argues that "Plaintiff cannot establish that a failure to adopt a policy or to train is what caused this alleged incident" because Serrabi's allegations concerning Collins' assault are not the result of "an alleged failure to adopt policies or train" but instead amount to "a deputy making the wrong decision." *Id.* at 9–10. As for the reports and complaints of excessive force Serrabi relies on in the amended complaint, Rhoden contends that Serrabi fails to establish that the complaints have merit or that they are substantially similar to the case at hand. *Id.* at 11–12.

In response, Serrabi asserts the U.S. Department of Homeland Security's Office of Civil Rights and Civil Liberties (DHS CRCL) opened new complaint investigations after visiting Baker which showed a "pattern[] of earlier-identified concerns." Doc. 35 at 5 (quoting doc. 16 ¶ 56). According to Serrabi, this allegation is sufficient to show a plausible pattern of deliberate indifference. *Id.* Serrabi also argues that Rhoden is liable because he failed to train or provide any oversight evidenced by the lack of any pre- or post-use of force analysis in Serrabi's detention records. *Id.* at 7 (quoting doc. 16 ¶ 51).

Serrabi alleges that Rhoden allegedly failed "to adopt appropriate policies and to properly train Officer Collins" and "further failed to discipline Officer Collins or to address or provide any oversight for the abuses [he] suffered." Doc. 16 ¶¶ 109–10. The

amended complaint references "numerous reports, complaints, and investigations of abusive conditions, and specifically inhumane treatment of detained immigrants in [Baker's] custody." *Id.* ¶ 26. It also mentions "numerous investigations by the DHS Office of the Inspector General and the [DHS CRCL], which . . . found serious mistreatment of detained individuals, including but not limited to 'the areas of unnecessary and excessive uses of force, uses of segregation, language access and verbal abuse by staff'" at Baker. *Id.* ¶ 29 (quoting 35-1).[17]

Rhoden cites to *Brooks*, 813 F.2d at 1193, doc. 31 at 11, which the Court finds particularly relevant. In *Brooks*, the plaintiff sued a police officer and argued "that the City of Atlanta was liable under 42 U.S.C. § 1983 because the City's procedures for handling citizens' complaints of police misconduct caused [his] injury." *Id.* at 1192. The plaintiff relied, in part, on ten citizens' complaints filed against the police officer, and the Eleventh Circuit stated that the plaintiff "never demonstrated that past complaints of police misconduct had any merit." *Id.* at 1192–93. The Eleventh Circuit further explained that "the number of complaints bears no relation to their validity." *Id.*

Here, missing from the amended complaint is any allegation that the reports, complaints, or investigations have merit. *Poulin*, 650 F. Supp. 3d at 1304 (citing *Brooks*,

---

[17] While not attached to the amended complaint, the DHS CRCL's Proposed Immediate Action Plan Baker County Detention Center (Plan), doc. 35-1 at 8–10, may be considered because it is "referenced in the [amended] complaint" even though it is "not physically attached." *Herbig v. Kretzer*, No. 8:13-CV-01692-T-24-MAP, 2013 WL 12090675, at *2 (M.D. Fla. Sept. 13, 2013) (citing *Gross v. White*, 340 F. App'x 527, 534 (11th Cir. 2009) (per curiam)).

813 F.2d at 1193). Serrabi only alleges the "reports, complaints, and investigations" were numerous, doc. 16 ¶ 26, not that they were meritorious. *See Teel v. Lozada*, No. 18-14367-CV-MIDDLEBROOKS, 2021 WL 12253902, at *5 n.5 (S.D. Fla. June 24, 2021) (granting summary judgment on a failure to supervise and discipline theory of liability where plaintiff fails to "indicate whether the citizen complaints were meritorious"); *Green On behalf of J.M.G. v. McDonald*, No. 2:24-00321-KD-N, 2025 WL 915055, at *3 (S.D. Ala. Mar. 6, 2005) (determining on a motion to dismiss that "Plaintiff fails to make the necessary allegations" where plaintiff alleged that defendant "had been involved in multiple incidents of misconduct that included the use of excessive force and other constitutional violations"), *report and recommendation adopted by* 2025 WL 913458 (S.D. Ala. Mar. 25, 2025).

Other than the conclusory allegation that "other individuals who had been detained at Baker had reported similar use-of-force violations at the time," doc. 16 ¶ 108, the amended complaint also fails to allege that the reports, complaints, or investigations are substantially similar to the conduct alleged in the amended complaint, *Poulin*, 650 F. Supp. 3d at 1304 (quoting *Buckler*, 680 F. App'x at 836 n.3); *see Fair v. Tony*, No. 22-60402-cv-WPD, 2022 WL 22838301, at *3, *5 (S.D. Fla. Sept. 1, 2022) (granting motion to dismiss on 42 U.S.C. § "1983 claims for an alleged failure to train and supervise" where "Plaintiffs' allegations fail to allege fact that demonstrate a pattern of prior, factually substantially similar incidents to the facts alleged").

To the extent Serrabi relies on DHS CRCL's Plan, doc. 35-1 at 8–10, to support his allegation DHS CRCL "found serious mistreatment of detained individuals," doc.

16 ¶ 29, the Plan is dated October 6, 2022, which post-dates Collins' alleged misconduct, *see id.* ¶¶ 49–50 (stating that "on December 21, 2021, . . . Officer Collins . . . entered Mr. Serrabi's cell," and "Officer Collins punched Mr. Serrabi in his left ear"); *see also Shehada v. Tavss*, 965 F. Supp. 2d 1358, 1374 (S.D. Fla. 2013) ("[T]he failure to investigate or take disciplinary action following the subject incident cannot support a claim of municipal liability, because the after-the-fact inadequate investigation or discipline could not have been the legal cause of the plaintiff's injury." (citations omitted)).[18] Therefore, I recommend Rhoden's motion to dismiss, doc. 31, be granted.

**Recommendation**

For the reasons stated above, I respectfully **recommend**:

1. United States of America's Motion to Dismiss Counts I-III of Plaintiff's Amended Complaint, doc. 20; be **denied**;
2. Defendant Sheriff Rhoden's Motion to Dismiss Plaintiff's Amended Complaint [ECF No. 16], doc. 31; be **granted**; and
3. The Clerk be directed to remove Defendant Sheriff Rhoden from the case.

---

[18] Insofar as Serrabi relies on *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) to argue that Rhoden ratified Collins' conduct, doc. 35 at 9, the Supreme Court opined that that "[t]he city cannot be held liable under § 1983 unless respondent proved the existence of an unconstitutional municipal policy," *Praprotnik*, 485 U.S. at 127–28. Further, the Supreme Court explained that "[r]espondent does not contend that anyone in city government ever promulgated, or even articulated, such a policy." *Id.* at 128. Serrabi fails to allege the existence of an unconstitutional policy promulgated or articulated by Rhoden. Rather, Serrabi alleges a "failure to adopt appropriate policies and to properly train," doc. 16 ¶ 109, as the cause of the alleged constitutional deprivations.

**Entered** in Jacksonville, Florida, on January 8, 2026.

/s/ Laura Lothman Lambert
*United States Magistrate Judge*

**Notice to the Parties**

"Within 14 days after being served with a copy of [a report and recommendation on a dispositive issue], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. See Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Order (Doc. No. 3), No. 8:20-mc-100-SDM, entered October 29, 2020, at 6.

c:
The Honorable Jordan E. Pratt, United States District Judge
Amy Godshall, Esquire
Daniel B. Tilley, Esquire
Katherine Blankenship, Esquire
Michelle Morton, Esquire
Kyesha Mapp, Assistant United States Attorney
Matthew Joseph Carson, Esquire
Michael P. Spellman, Esquire